UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Kevin Green,

    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Crim. No. 19-103 (03) (MJD/ECW)

_____

    Amber M. Brennan and Justin A. Wesley, Assistant United States Attorneys, Counsel for Plaintiff.

    Paul W. Rogosheske, Counsel for Defendant.

_____

This matter is before the Court on Defendant's motion for reconsideration of the detention order. (Doc. Nos. 183 and 197). A hearing was held on April 23, 2020 whereby counsel and defendant appeared by video conference.

### I. Introduction

Defendant has been charged in the Superseding Indictment with conspiracy to distribute controlled substances, specifically Fentanyl and possession of controlled substances, specifically Fentanyl and Heroin. On

1

September 4, 2019, Magistrate Judge Leung held a detention hearing, and by Order dated September 12, 2019, found that Defendant had not rebutted the presumption of detention in this case and that there were no conditions or combination of conditions that would reasonably assure his presence at future court proceedings or that would assure the safety of the community.   (Doc. No. 69.)

## II.   Standard

The Bail Reform Act creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when there is probable cause to believe a defendant committed a certain offense, including "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."   United States v. Boykins, 316 F. Supp.3d 434, 436 (D.D.C. 2018) (citing 18 U.S.C. § 3142(e)(3)(A)).

In this case, there is a rebuttable presumption in favor of detention as Defendant meets the criteria in 18 U.S.C. § 3142(e)(2)(A) and (C); he has a prior conviction for conspiracy to possess with intent to distribute 100 grams or more

of heroin, which is an offense listed in subsection (f)(1); and not more than five years have elapsed since his release from imprisonment for his prior drug conviction.

In making the determination whether detention is appropriate, the Court must consider the following factors:

    (1)   The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

    (2)   the weight of the evidence against the person;

    (3)   the history and characteristics of the person, including–

        (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
        (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Magistrate Judge's decision is subject to de novo review.  United States v. Maull, 773 F.2d 1479, 1484-85 (8th Cir. 1985).

### III. Argument

Defendant attempts to rebut the presumption for detention by arguing that there are conditions or combination of conditions that will reasonably assure his appearance at future court proceedings and the safety of the community.  He argues that his mother posted a personal surety bond in the amount of $500,000 in state court, File No. 19HA-CR-19-1731.  The terms of the conditional release order in state court are that Defendant shall: not leave Minnesota, keep his attorney informed of his current address; consume no alcohol/controlled substances; random testing; remain law-abiding; make all future court proceedings; no contact with co-defendants (Minnie Loyd); no use of firearms or dangerous weapons; participate in Pretrial Release Program.  (Def. Ex. 1.)

Defendant asserts he will post an additional personal surety bond and will participate in home confinement and abide by all the requirements of the program which include electronic home monitoring and GPS.  Defendant also agrees to be prohibited from possessing or using a cellular phone, pager, modem,

fax machine or internet on-line services.   He agrees to submit to a search of his person, property, vehicle, place of residence and any other property under his control and permit to the confiscation of any evidence or contraband.   He agrees to surrender his passport and not obtain a new passport, and he agrees to avoid all contact with potential witnesses, unless in the presence of his attorney.

Defendant argues that due to the COVID-19 pandemic, Sherburne County Jail will likely be infected, and he will more likely be infected in a jail setting.

Defendant further points out that unlike his co-defendants, he is not charged with possessing weapons, or suspected in any death.

The government opposes pretrial release for this Defendant. The crimes charged are very serious drug crimes involving the distribution of Fentanyl and Heroin, and that one of his co-defendant's alleged customers died from drugs allegedly purchased from Defendant.

The government asserts that from December 2018 through July 8, 2019, Defendant was involved in a conspiracy to distribute fentanyl which was promoted only as heroin.   After one of co-defendant Relondo Hall's customers overdosed and died from the fentanyl he supplied, law enforcement obtained a

search warrant for Hall's Airbnb.[1]  Hall was not there at the time, but co-defendant Abari was present.  Law enforcement seized mixtures of heroin and fentanyl being packaged for sale in the kitchen, a firearm from Abari and several thousands of dollars in cash.

Another warrant was executed at a residence where both Abari and Hall were found.  Hall was in possession of a firearm, and law enforcement seized more heroin/fentanyl mixtures as well as additional cash.

During a forensic search of Abari and Hall's cell phones, police found several incriminating conversations between the two and someone called "Stunna," who was later identified as this Defendant.  Police then conducted surveillance and gathered more information about Defendant, eventually learning where he was staying.  On July 8, 2019, police executed a search warrant at Defendant's residence and recovered 298 grams of heroin/fentanyl mixtures along with $196,921 in cash.

Defendant has a previous conviction for conspiracy to possess with intent

---

[1] Defendant contests this point, noting that in a prior search warrant affidavit, it was asserted that the alleged customer died of a cocaine overdose and the defendants in this case are not charged with distribution of cocaine. (Doc. No. 208, Ex. 3.)

to distribute 100 grams or more of heroin. (Crim. No. 06-50 (DSD/JJG)). After serving his 124-month sentence, Defendant was originally released from prison in September 2015. He repeatedly violated the conditions of supervised release and was sentenced to multiple additional terms of imprisonment from which he was ultimately released, with no supervision to follow, on September 20, 2018.

With regard to the bond posted in state court, the government asserts that Magistrate Judge Leung found that "[i]n weighing that very short period of time against his lengthy and frequent history of violating supervised release, the Court finds this insufficient to support Defendant's release." (Doc. No. 69 at ¶ 5.) Magistrate Judge Leung also noted that Defendant performed poorly while on supervision for his prior conviction and that the violations were of such frequency and severity that he was sentenced to 18 months imprisonment rather than be allowed to complete his supervised release term. (Id. at ¶ 4.)

**IV.    Findings**

Based on the record before it, and applying the factors set forth in § 3142(g), the Court finds that Defendant's continued detention is warranted. He is charged with a serious crime, and the government has proffered there is

significant evidence against Defendant, including the text conversations with his co-defendants, police surveillance and the amount of drugs and cash seized from his residence. The text conversations reveal that Defendant refers to himself as "Stunna," references his girlfriend's place in Burnsville, and includes conversations about drug prices, weights, and drug quality. (Doc. No. 161 at 3.) This evidence, together with his criminal history and noncompliance and that he is facing a 15-year mandatory minimum sentence in this case demonstrates that releasing him poses a risk to the community and a risk that he will not appear in court.

The Court further finds that the COVID-19 pandemic does not warrant his release. Defendant asserts he suffers from asthma, high blood pressure, that is being monitored at the Jail, and has suffered a heart attack in the recent past, and is therefore vulnerable to the coronavirus. Defendant does not claim he has been exposed to the virus, nor has he demonstrated that his needs cannot be met and protected during his detention at the Sherburne County Jail.

The government has submitted evidence to show the steps taken by the Sherburne County Jail to keep inmates and staff safe. (Gov't Ex. (Frank Aff.).)

Brian Frank is the Jail Administrator at the Sherburne County Jail, and asserts in his affidavit that as of April 17, 2020, there are no known cases of COVID-19 at the Sherburne County Jail.  (Frank Aff. ¶ 4.)[2]  The Jail has medical professionals on site, and if necessary, an inmate can be transferred to hospitals or outside clinics.  (Id. at ¶ 3.)

With respect to the COVID-19 virus, the Jail took steps to reduce the inmate populations, which resulted in a 25% decrease as of April 10, 2020.  (Id. at ¶¶ 7-8.)  The Jail has also adapted its staff to limit contamination and cross-contamination.  (Id. at ¶ 24.)  In addition, the Jail is structurally designed to isolate and contain airborne threats.  (Id. at ¶ 17.)  It also has negative pressure units that could isolate and treat symptomatic inmates.  (Id. at ¶ 13.)

In response to COVID-19, new arrivals are placed in a 14-day quarantine unit that is monitored by medical professionals and isolated from the general population.  (Id. at ¶ 10.)  In addition, there are strict social-distancing measures in place, proper handwashing is encouraged, modified delivery systems are in place to minimize person-to-person contact, as well as other

---

[2] At the hearing, the government asserted that at the present time, no are still no known cases of COVID-19 at the Sherburne County Jail.

9

measures.   (Id. at ¶¶ 20, 23 and 24.)   New arrivals must complete both the Coronavirus screening checklist and a body temperature check.   (Id. at ¶ 24.) The Jail has also heightened its cleaning regimen, which includes four daily cleanings of all frequently touched surfaces with a chemical specifically formulated to kill viruses, cleaning before every meal and before nightly lockdown.   (Id. at 18.)

A recent inspection of the Jail by the Department of Corrections Inspection and Enforcement Unit found that the steps taken by Sherburne Count exceed prevention measures being taken across Minnesota and do not violate any Rule provision.   (Id. at ¶ 6.)

Based on the above, and in consideration of the factors listed in § 3142(g), the Court finds there are no conditions or combination of conditions that would reasonably assure Defendant's presence at future court proceedings or that would assure the safety of the community.

IT IS HEREBY ORDERED that Defendant's Motions to Reconsider Detention [Doc. Nos. 183 and 197] are **DENIED.**

Date:   April 23, 2020

s/ Michael J. Davis
Michael J. Davis
United States District Court
