## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-103 (MJD/ECW) (3) |
| Plaintiff, | |
| v. | **ORDER**[1] |
| KEVIN GREEN (3), | |
| Defendant. | |

This matter is before the Court on Defendant Kevin Green's Pro Se Motion to Disclose Full Discovery (Dkt. 222); Defendant Kevin Green's Unopposed Motion to File Motions Late (Dkt. 257), and Defendant Kevin Green's Motion for a *Franks* Hearing (Dkt. 258).[2] On August 24, 2020, the Court held a hearing by Zoom for Government on the issue of whether Defendant Kevin Green ("Defendant" or "Green") has made the requisite "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the

---

[1] The majority of courts within this District have treated a motion for a *Franks* hearing as a non-dispositive motion. *See*, *e.g*., *United States v. Hari*, No. CR181501DWFHB, 2019 WL 7041849, at *1 (D. Minn. Dec. 20, 2019) ("Motions for *Franks* hearings are non-dispositive and, therefore, reviewed for clear error.") (citation omitted); *United States v. Mays*, Crim. No. 19-75, 2019 WL 4565636, at *4 (D. Minn. Sept. 20, 2019) (collecting cases).

[2] The Court notes that Docket Entry 258 also includes a Motion to Suppress Evidence as a Result of a Search and Seizure. While Green consented to a Zoom hearing with respect to the request for a *Franks* hearing, he seeks an in-person hearing for the motion to suppress as well as for the Motion for Relief from Prejudicial Misjoinder or in the Alternative for Severance (Dkt. 266), both of which will be addressed in a subsequent Report and Recommendation after an in-person hearing is held.

warrant affidavit" to warrant a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). (Dkt. 292.) Justin A. Wesley, U.S. Attorney's Office, appeared on behalf of the United States of America ("the Government"); and Robert D. Richman appeared on behalf of Defendant Kevin Green, who was present at the hearing via Zoom for Government by consent.

## I.     LEGAL STANDARD

Green seeks a *Franks* hearing with respect to the March 6, 2019 Tracking Warrant for the 612-263-12XX cell number (as extended on May 1, 2019), the June 11, 2019 Tracking Warrant for the 612-219-98XX cell number, and the July 9, 2019 Search Warrant for telephones seized from Green and Minnie Loyd.

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may seek a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. *See United States v. Daigle*, 947 F.3d 1076, 1084 (8th Cir. 2020). "'However, in order to merit a *Franks* hearing, a defendant must show both (1) that the affiant 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause.'" *Id.* (cleaned up) (quoting *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013), quoting *Franks*, 438 U.S. at 155-56). This "requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (citation omitted); *see also Franks*, 438 U.S.

2

at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."); *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under *Franks* ]."). Moreover, "[a] *Franks* hearing must be denied unless the defendant makes a **strong** initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (internal quotations and citation omitted) (emphasis added).

## II.    ANALYSIS

**A.    Motion for a *Franks* Hearing with Respect to the March 6, 2019 Tracking Warrant for 612-263-12XX (as extended on May 1, 2019) and the June 11, 2019 Tracking Warrant for 612-219-98XX**

Green argues that a *Franks* hearing is appropriate with respect to the March 6, 2019 Tracking Warrant for 612-263-12XX (as extended on May 1, 2019) and the June 11, 2019 Tracking Warrant for 612-219-98XX.[3] Minneapolis Police Officer Jason Schmitt ("Officer Schmitt") was the affiant for both warrants. (Gov't Exs. 9-11.) Green asserts that because the affidavits for these warrants are directly at odds, this alone

---

[3]     Pursuant to 18 U.S.C. §§ 2703, 2711, 3122(a)(2), 3123, and 3127 and Minn. Stat. §§ 626A.36 through 626A.42, a state district judge issued search warrants on March 6, 2019, May 1, 2019, and June 11, 2019, authorizing the installation and use of a pen register and trap and trace device for these cellular phones. The information sought included caller identification (incoming and outgoing telephone numbers) for the numbers. In addition, the search warrants authorized provision of the cellular tower location and service information, and global position system ("GPS") information related to the telephone numbers at issue.

3

establishes that at least one of the affidavits contains information that was intentionally, or at least recklessly, false. (Dkt. 258 at 2-3; Dkt. 259 at 1-2, 4-5.) In particular, Green relies on the portions of these search warrant affidavits that rely upon a *Scales*[4] interview where the March 6, 2019 Search Warrant Application states the interviewee identified one telephone number as that used to contact "Stunna" to arrange for a sale of narcotics and the June 11, 2019 Search Warrant Application states the *Scales* interviewee identified a different telephone number as that used to contact "Stunna" to arrange for (apparently) the same sale.

In particular, the March 6, 2019 Search Warrant Application provides in relevant part as follows:

> Your Affiant learned of a narcotics dealer who uses the street name of "Stunna". The information was obtained via a SCALES interview during the course of a narcotics arrest. "Stunna" was said to be a large scale supplier of Heroin. During the course of the interview the arrested party stated they had been in a Porsche SUV with "Stunna" and purchased 100 grams of heroin. "Stunna" was said to often drive a Porsche SUV that was Rose in color. **The phone number of 612-263-12[XX] was identified as the mobile number used to contact "Stunna" and arrange for the mobile sale of narcotics**.

(Gov't Ex. 9 at 3 (emphasis added).) The May 1, 2020 request for an extension contains similar language with respect to the *Scales* interview. (*See* Gov't Ex. 10 at 3.)

The June 11, 2019 Search Warrant Application, on the other hand, provides in relevant part as follows:

---

[4] In *State v. Scales*, 518 N.W.2d 587 (Minn. 1994), the Minnesota Supreme Court announced a new law requiring that all custodial interrogations, including any information about rights, any waiver of those rights, and all questioning, be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention. 518 N.W.2d at 592.

> Your Affiant learned of a narcotics dealer who uses the street name of "Stunna". The information was obtained via a SCALES interview during the course of a narcotics arrest. "Stunna" was said to be a large scale supplier of Heroin. During the course of the interview the arrested party stated they had been in a Porsche SUV with "Stunna" and purchased 100 grams of heroin. "Stunna" was said to often drive a Porsche SUV that was Rose in color. **The phone number of 612-219-98[XX] was identified as the mobile number used to contact "Stunna" and arrange for the mobile sale of narcotics.**

(Gov't Ex. 11 at 2-3. (emphasis added).)

Green asserts that, given that the portions of the warrant affidavits at issue contain identical language except for the two entirely different telephone numbers identified as the number used by "Stunna" to arrange the sale, he has made the requisite showing of an intentionally false or reckless statement to justify a *Franks* hearing. (Dkt. 259 at 4-5.)

The Court concludes that Green has met his burden to show that the difference in telephone numbers allegedly provided by the *Scales* interviewee was at least a false statement made with reckless disregard for the truth, warranting a *Franks* hearing. The Government argues that Green cannot "bootstrap" one warrant filed by Officer Schmitt in order to attack another warrant. The case relied upon by the Government for this proposition (*see* Dkt. 271 at 3), *United States v. Lucca*, 377 F.3d 927, 932 (8th Cir. 2004), is inapposite to the facts in this case. The facts in *Lucca* involved false statements made by the officer's police chief that were unrelated to any warrant and unrelated to the prosecution at issue in that case and a civil complaint filed by a private citizen alleging on information and belief that the officer had provided "unreliable, exaggerated, or fabricated information" to a judge in order to obtain a warrant to search her property. *Id.* Here, the two warrants at issue pertain to the same investigation and are identical with

5

respect to the information regarding the *Scales* interview except for the telephone number attributed to "Stunna" in arranging for the mobile drug buy.

The Government concedes that one of these telephone numbers is false by asserting that the "263" number is correct. (Dkt. 271 at 4.) According to the Government, what Green characterizes as deliberate falsehoods are more rationally explained as mistakes made by Officer Schmitt in copying and pasting the same language between warrant affidavits and then hastily going back and making changes in an attempt to tailor the June 11, 2019 Tracking Warrant to track the 219 number, and in each instance where the 263 number should appear, the 219 number appears instead. (Dkt. 271 at 4.) Indeed, "[a]llegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (citations omitted). By way of example, the Court has previously concluded with respect to the July 8, 2019 Search Warrant for a Burnsville residence (Gov't Ex. 7) that a one digit difference within the 612-265-12XX number versus 612-263-12XX in the same search warrant application at most amounted to a typographical error and was insufficient to demonstrate a reckless or deliberate falsehood. (Dkt. 212 at 10.) Here, however, it is insufficient to say that the wholesale changing of a telephone number provided by the *Scales* interviewee, where the interview was presumably taped pursuant to state law and could be reviewed by Officer Schmitt, is a typographical error. While the evidence may ultimately show that this was merely a mistake on the part of Officer Schmitt, the record before the Court indicates that Officer Schmitt used the same facts obtained from the same *Scales* interview relating to the same drug sale to obtain two

6

different tracking warrants for two different numbers, which is troubling and sufficient to require a *Franks* hearing.  Green should be able to at least question Officer Schmitt about why he used two numbers from the same source for different warrants and the process that went into drafting this portion of the affidavits for both the March 6, 2019 Tracking Warrant (as extended on May 1, 2019) and June 11, 2019 Tracking Warrant.

With respect to the June 11 Tracking Warrant, Green also argues that the misrepresentations in the supporting affidavit go beyond the number identified by the *Scales* interview, including that Officer Schmitt falsely stated that he had previously obtained a court order authorizing the tracking of the 219 number, but the order is expiring, and that Minnie Loyd used the 219 number to rent a Maserati on June 10, 2019. (Dkt. 259 at 6.)  The Government does not assert that these statements in the affidavit are true.  The Government in fact concedes that Loyd did not use the 219 number to rent the Maserati, but insists she used the number to rent other cars.  (Dkt. 168 at 21; Dkt. 168-4.) The Court concludes that Green has met his burden for the purpose of obtaining a *Franks* hearing that these representations were either intentional or reckless falsehoods.

The Government also argues that even if the telephone numbers in the March 6, 2019 Tracking Warrant (as extended on May 1, 2019) and the June 11, 2019 Tracking Warrant are excised from the paragraph detailing the *Scales* interview, and the information about the expiring court order as well as the information regarding the Maserati is also excised from the June 2019 warrant, the remaining information in the affidavits would still establish probable cause to track the numbers in both sets of tracking warrants.  (Dkt. 271 at 4-5.)  The Government maintains that the 219 number

7

was tied to Loyd, who was believed to be a co-conspirator of Green in the distribution of narcotics, as Green was "rarely" observed without Loyd being present. (*See id.*)

As stated previously, the Court may not grant a *Franks* hearing if the search warrant is supported by probable cause even with the offending portions excised. *See Daigle*, 947 F.3d at 1084. Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. With respect to the cell site location information obtained from GPS phone tracking, there must be a fair probability that evidence of suspected narcotics dealing would be found in data generated by the tracking of the cellular phone at issue. *See United States v. Stachowiak*, No. 18-CR-296-SRN-KMM, 2019 WL 3292048, at *7 (D. Minn. Apr. 23, 2019), *R.&R. adopted*, 2019 WL 2560519 (D. Minn. June 21, 2019); *see generally*, *United States v. Carpenter*, 138 S. Ct. 2206, 2217-20 (2018).

"Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

With this standard established, the Court examines whether the various warrants would still be supported by sufficient probable cause even if the offending portions were omitted.

  1.  **March 6, 2019 Tracking Warrant for 612-263-12XX**

With respect to March 2019 tracking search warrant for 612-263-12XX, outside of

9

the information from the *Scales* interviewee, the supporting affidavit contained the following information:

- Your affiant was able to investigate this information and determined that "Stunna" was named Kevin Termell Green. It was further learned that his girlfriend used the social media name of Minnie Betty Jean.

- Green has a controlled substance felony conviction out of Illinois.

- Surveillance was established in the area of Franklin Ave and Nicollet Ave searching for a target of a separate narcotics investigation. Officer Schmitt noted a Rose-colored Porsche SUV drive down the alley and into the back parking lot of XXXX Blaisdell Ave South. The vehicle's license plate was noted as BZMXXX. It registered to a Minnie Loyd. A comparison of photographs confirmed that Minnie Loyd was the same individual as Minnie Betty Jean.

- Officer Schmitt was able to physically observe and identify Green driving this vehicle. Green was observed travelling to multiple locations and meeting with three different persons for short periods of time. The locations included XXXX Blaisdell Ave S where GREEN pulled into the back parking lot and met with a male. Green then drove to Winnetka and Highway 55 in Golden Valley where he left his vehicle running in the traffic lane of the parking lot in front of a restaurant while he met with a male in a vehicle. Green then drove to Mickey's Liquor on Plymouth Ave N and Emerson Ave N where he met with another person in a vehicle. Officer Schmitt believed that these interactions in his experience were indicative of narcotics transactions.

- It was believed that Green may be living at an address in Burnsville, however, this information had not been confirmed.

- The phone number 612-263-12XX has been identified as a Verizon Wireless affiliated and operated number.

(Gov't Ex. 9 at 3.)

The only portion of Officer Schmitt's affidavit that linked the 612-263-12XX number to any criminal activity was the information from the *Scales* interviewee regarding the number being used to contact "Stunna" and arrange for the mobile sale of

narcotics. There was no other information connecting the phone number to any individual under criminal investigation. Without the information from the *Scales* interviewee, there is no support for the issuance of the March 6, 2020 Tracking Warrant for that phone number, and therefore a *Franks* hearing should be held to determine the correct number provided by the *Scales* interviewee.

### 2. May 1, 2019 Extension of Tracking Warrant for 612-263-12XX

The May 1, 2019 extension of the March 6, 2019 Tracking Warrant for 612-263-12XX contains the same supporting facts as the March 2019 supporting affidavit, with the following additional relevant information:

- It was believed that Green may be living at the address of XXXX in Burnsville. The residence was rented by Loyd.

- The phone number 612-263-12XX had been identified as a Verizon Wireless affiliated and operated number. A current court order was in place on this cell phone but was expiring.

- A CRI stated that Green used the Porsche to distribute heroin in Minneapolis and employs people to sell narcotics for him. Green had been identified as running surveillance from the Porsche SUV while supervising the sale of heroin on the streets. At one point a CRI identified a male known as "Black" driving a Dodge van with MN license plate BREXX waiting at a location in the City of Minneapolis. The CRI stated heroin users were lined up and waiting for Black to sell them heroin. The CRI said the Porsche pulled up, tossed a bag to "Black" in the driver's seat of the van and a feeding frenzy of heroin transactions occurred. The CRI stated that it was a pound of heroin. The van BREXX registered to Loyd. "Black" had yet to be identified.

- On April 17, 2019, surveillance was conducted on Green. Officer Schmitt observed Green exit a home in Burnsville. This was the first time he had visually been observed at the address he is believed to live at. Green got into the passenger seat of a Red Chevrolet Camaro with Kentucky license plate 085XXX. The vehicle's license plate was run and found to be a rental vehicle. Green had previously been observed driving a rental vehicle about a month earlier. That vehicle had been rented and returned to the Midway airport in Chicago on April 6. That vehicle, an

11

- Infinity with an Ohio license plate of GEDXXXX, had been rented by Kyamiaya Howell in the Chicago area. Howell may be Green's sister.

- Green had recently driven to Chicago where he stayed for about 20 hours before returning to the Twin Cities. On April 6, 2019, Green's phone location logged time in at the Midway airport location in Chicago. The affiant later confirmed that the Camaro was rented on that date. When Green reached the area around Black River Falls, Wisconsin, his phone was turned off. In Officer Schmitt's experience, turning off a cell phone during a partial or full trip from Chicago to the Twin Cities when transporting drugs is not uncommon.

- Green was observed driving from Burnsville to multiple locations. Of note, he drove to 45 Street East and Clinton Ave S in Minneapolis where he exited his vehicle and took a seat in the rear of a Chrysler 300. Green exited the Chrysler within 5 minutes and was holding something that appeared to have weight to it under his jacket. His actions were that of concealing as he hunched over and scanned the area with his head moving side to side as he got back into his vehicle. Green now took over as the driver of the Camaro. Officer Schmitt was able to later identify Minnie Loyd as the passenger in the vehicle.

- On April 24, 2019, Green was again in Chicago and had been for about two days. Around 2130 hours, Green was headed back towards Minneapolis and his phone was turned off around Janesville, Wisconsin. That phone at that time had yet to be turned back on.

(Gov't Ex. 10.)

Similar to the March 6, 2019 Tracking Warrant, the May 1, 2019 extension is dependent on the information from the *Scales* interviewee that the 612-263-12XX number was used to arrange for the drug transaction. The remainder of the affidavit does not connect the cell phone to illegal activity or to any other person. While the May 1, 2019 affidavit does mention the fact that a phone belonging to Green was turned off in a manner that typically done by drug traffickers to avoid detection by law enforcement, there is no indication that the phone mentioned belonging to Green was the 612-263-12XX number, and in any event such information could be excluded as possible fruit of a

12

poisonous tree depending on what occurs with the March 6, 2019 Tracking Warrant. Therefore, like the March 6, 2019 Tracking Warrant, the Court finds that a *Franks* hearing is appropriate with respect to inquiring about the correct number provided by the *Scales* interviewee in connection with the May 1, 2019 extension.

### 2. June 11, 2019 Tracking Warrant for 612-219-98XX[5]

The June 11, 2019 Tracking Warrant contains similar supporting facts as the May 11, 2019 request for an extension (obviously, other than the different number at issue) and contains the following additional relevant facts with respect to probable cause for the issuance of the tracking warrant:

- The phone number 612-219-98XX had been identified as a Verizon Wireless affiliated and operated number. A current court order was in place on this cell phone but is expiring. Surveillance was ongoing.

- A call from jail unrelated to the number at issue that allegedly supported the assertion that Green was engaged in narcotics activity.

- Officer Schmitt identified a phone number belonging to Loyd. This phone number, 612-219-98XX, was used to rent a Maserati with Minnesota License Plate CCZXXX on June 10, 2019. Loyd is believed to be a co-conspirator with Green in the distribution of narcotics.

- The cell phone number may belong to Green. Green is rarely observed without Loyd being present.

(Gov't Ex. 11.)

Even assuming that the Court were to remove the information from the *Scales* interview regarding the number used in the drug transaction, the information regarding

---

[5] The Court notes that the parties appear to dispute whether Green has standing to challenge this tracking warrant. Any standing issues may be addressed by the parties as part of the motion to suppress during the requested in-person proceeding.

the current court order that was expiring, and the information that Loyd rented a Maserati using the 612-219-98XX number, the Court finds that sufficient probable cause still exists for the issuance of the June 11, 2019 Tracking Warrant.  The affidavit also provided the following relevant facts: the *Scales* interviewee provided that a "Stunna" used a Porsche SUV to distribute heroin (Gov't Ex. 11 at 2); it was determined that Green was "Stunna" and that Loyd was his girlfriend (*id.* at 3); a Porsche SUV was registered to Loyd (*id.*); a CRI provided that the driver of the Porsche had been running a heroin distribution ring using a Porsche in which a person in the Porsche would give another person in a Dodge van with Minnesota license plate BREXXX heroin, who would then sell the heroin (*id.*); that the aforementioned Dodge van with Minnesota license plate BREXX was registered to Loyd; that the 612-219-98XX number belonged to Loyd (*id.* at 4); and that it was believed that Loyd was a co-conspirator with Green in the distribution of narcotics and that Green was rarely seen without Loyd (*id.* at 4-5).  Given that Loyd was connected to two instrumentalities of narcotics distribution (two of the vehicles involved in heroin distribution) used by Green as corroborated by information from CRIs, that the 219 number belonged to Loyd, and that it appears that that Green was rarely observed without Loyd as a possible co-conspirator, the Court finds based on the totality of this information that there was a fair probability that evidence of suspected narcotics dealing would be found in data generated by the tracking of the cellular phone at issue.  As such, the Motion for a *Franks* hearing with respect to the search warrant for the 612-219-98XX number is denied.

**B.      July 9, 2019 Search Warrants for Telephones Seized from Green and Loyd**

Green also seeks a *Franks* hearing as to the July 9, 2019 Search Warrant with respect to the three cell phones seized from Green and one from Loyd. (*See* Gov't Ex. 12.) The July 9 application for a search warrant sought authorization to search the subject cell phones for all text messages, photographs, phone logs, and data therein that relates to the sale and distribution of narcotics. (Gov't Ex. 12 at 1.) The relevant facts supporting the issuance of this search warrant were as follows:

- On July 8, 2019, Officer Schmitt executed a search warrant at a residence located in Burnsville ("Burnsville Residence"). This search warrant was based on the investigation into Green's alleged distribution of heroin in Minneapolis.

- Green was stopped leaving the Burnsville Residence while driving an unlicensed black Bentley sedan.

- Green and Loyd have been previously observed during surveillance conducting narcotics related activities. Those activities ultimately resulted in the search warrant for the Burnsville Residence.

- The search warrant at the Burnsville Residence led to the recovery of 298.8 grams of Heroin. Cash proceeds were recovered in the amount of $196,921.00 dollars in US Currency.

- Officer Schmitt believed that Green was a mobile narcotics dealer who utilized technology such as a cell phones to conduct narcotics sales. Three cell phones were recovered from Green and inventoried.

- Based on Green and Loyd being observed together during narcotics related activity, it was believed that Loyd's phone was also used for narcotics activity.

- On April 6, 2019, Green drove to Chicago, Illinois where he stayed for about 21 hours before returning to the Twin Cities on April 7, 2019. The phone law enforcement was tracking, (612) 263-12XX, was powered off as Green drove past Black River Falls, Wisconsin. That cell phone number was originally provided by a defendant in a *Scales* interview and also provided by a CRI as a mobile number used to place orders for heroin. Based on Officer Schmitt's experience, and upon

15

conversations with other law enforcement officers and those involved in the trafficking of narcotics, he knew that people turn their phones off when they travel with large amounts of narcotics to make it impossible for law enforcement to track their movements via the GPS function of their cell phone. Officer Schmitt also noted that based on his training, on his experience, and upon conversations with other law enforcement officers that Chicago, Illinois is a source city for heroin, and it is common for people who purchase heroin in bulk to travel to Chicago, stay for a short time, and return to the area where they sell the drug.

- On April 24, 2019, Green was again in Chicago and had been for about two days. When Green was driving from Chicago to Minnesota, his phone that law enforcement was tracking, (612) 263-12XX, was shut off as Green was close to Janesville, Wisconsin. As noted above, this is common with drug dealers who are traveling with large amounts of narcotics and do not want to be tracked by law enforcement through their cell phone.

- One cell phone was recovered from the Burnsville Residence and is believed to be Loyd's cell phone. Loyd attempted to grab and utilize the cell phone while a female officer was assisting her with putting on her clothing.

- Green and Loyd were both booked into Dakota County Jail on felony narcotics charges.

(Gov't Ex. 12.)

Green argues that a *Franks* hearing is necessary in part because Officer Schmitt failed to disclose that the Burnsville Residence mentioned in the supporting affidavit is rented by Loyd, and she lives there. (Dkt. 259 at 16.) Green maintains that had this fact been included, it would have underscored that there was no basis to attribute the drugs and cash found in Loyd's home to Green. (*Id.*) Green also maintains that Officer Schmitt failed to reveal that none of the four cell phones for which he sought a search warrant had the number 612-263-12XX, the number that two sources had identified in connection with Stunna's alleged drug activities. (*Id.*) Further, Green asserts that Officer Schmitt falsely claimed that Green turned off his phone near Janesville, Wisconsin on

16

April 24, 2019, because Officer Schmitt failed to mention that the phone had never been turned back on at least as of May 1, 2019, undercutting the assertion in the warrant that this activity was consistent with evading tracking by law enforcement. (*Id.* at 16-17.) According to Green, without this information, the search warrant lacks the requisite probable cause to link the mobile phones to criminal activity. (*Id.*)

Even without the offending information and even assuming that the affidavit had included that Loyd rented the Burnsville Residence or information regarding the 612-263-12XX number, the Court finds that the supporting affidavit contains sufficient support for the issuance of the search warrant. This includes information: that the cellphones at issue were seized from Green after his arrest leaving the Burnsville Residence and the phone from Loyd was seized at the residence after execution of the search warrant for the Burnsville Residence, which resulted in the recovery of almost 300 grams of heroin; that Green and Loyd have been previously observed during surveillance conducting narcotics related activities; and that Green and Loyd had been both booked into Dakota County Jail on felony narcotics charges. This information, coupled with the fact that courts have recognized that cell phones are recognized tools of the drug trade, provides sufficient grounds to believe that evidence relating to a drug conspiracy would be found on the cell phones seized from Green and the Burnsville Residence. *See United States v. Oliver*, No. CR 15-164 (DSD/BRT), 2015 WL 13731345, at *9 (D. Minn. Oct. 13, 2015) (finding in the context of examining probable cause for the issuance of search warrants for cell phones that "cell phones are recognized tools of the drug trade. . . .") (citations omitted), *R&R. adopted*, 2015 WL 7432334 (D. Minn. Nov. 23, 2015); *see*

*generally*, *Riley v. California*, 573 U.S. 373, 401 (2014) ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information."). For these reasons, the Motion for a *Franks* hearing with respect to the search of the four seized cell phones is denied.

### III.     ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.      Defendant Kevin Green's Pro Se Motion to Disclose Full Discovery (Dkt. 222) is **DENIED**.[6]

2.      Defendant Kevin Green's Unopposed Motion to File Motions Late (Dkt. 257) is **GRANTED** only to the extent that he will be allowed to proceed with his motions for relief from prejudicial misjoinder or for severance (Dkt. 266) and his motion to suppress evidence obtained as a result of search and seizure and for a *Franks* hearing (Dkt. 258).

3.      Defendant Kevin Green's Motion for a *Franks* Hearing (Dkt. 258) is **GRANTED** in part and **DENIED** in part.

4.      Defendant Kevin Green will have the opportunity to examine Officer Jason Schmitt at an in-person suppression hearing with respect to the mobile telephone number

---

[6] "It has long been Eighth Circuit policy 'that when a party is represented by counsel, we will not accept pro se briefs for filing.'" *United States v. Hunter*, No. CR 12-185(3) ADM/FLN, 2016 WL 6915506, at *3 (D. Minn. Nov. 22, 2016) (quoting *United States v. Hunter*, 770 F.3d 740, 746 (8th Cir. 2014), quoting *United States v. Payton*, 918 F.2d 54, 56 n.2 (8th Cir. 1990)).

identified by the *Scales* interviewee as the mobile number used to contact "Stunna" and arrange for the mobile sale of narcotics as set forth in the affidavits in support of the applicable Tracking Warrants (Gov't Exs. 9-11).

5. Defendant Kevin Green's Motion for a *Franks* Hearing is otherwise **DENIED**.

DATED: September 23, 2020 　　　　　　　　　*s/Elizabeth Cowan Wright*
　　　　　　　　　　　　　　　　　　　　　ELIZABETH COWAN WRIGHT
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge